IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHARON WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 14 C 9886 |
| | ) | |
| RECEIVABLES PEFORMANCE MANAGEMENT, LLC, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Sharon Wilson ("Wilson") and Receivables Performance Management, LLC ("RPM") have filed Fed. R. Civ. P. ("Rule") 56 cross-motions for summary judgment and have completed the briefing on those motions. For the reasons set forth in this memorandum opinion and order, both motions are denied, although one issue -- the question whether RPM violated one section of the Fair Debt Collection Practices Act (the "Act," 15 U.S.C. § 1692 et seq.)[1] -- is resolved adversely to RPM as a matter of law.

## Legal Standard

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th

---

[1] All citations to the Act will take the form "Section --," without any need for repeated references to Title 15.

Cir. 2002)). Courts "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts" in resolving motions for summary judgment (Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003)). But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists (Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008)) and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (id.). Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). As with any summary judgment motion, this opinion accepts each nonmovant's version of any disputed facts, but only so long as it is supported by record evidence.

One more complexity is added where, as here, cross-motions for summary judgment are involved. Those same principles require the adoption of a dual perspective that this Court has often referred to as Janus-like: As to each motion the nonmovant's version of any disputed facts must be credited, an arrangement that sometimes causes the denial of both motions.

That has unfortunately proved to be the case here, for each party has shown that genuine issues of material fact remain that must be addressed before this dispute may be resolved. What follows is a brief summary of the facts, with material disagreements between the parties' narratives noted where appropriate.

**Factual Background**[2]

This lawsuit stems from RPM's efforts to collect a debt incurred by Wilson on an AT&T Mobility account (R. St. ¶ 6). RPM was assigned that account on October 7, 2014[3] and shortly thereafter placed calls and sent a letter to Wilson in an attempt to collect on it (W. St. ¶¶ 9-11). On October 16 Wilson faxed RPM's collection letter to Debtors Legal Clinic ("DLC"), a law office that had been assisting her since April in dealing with various debts (W. St. ¶¶ 8-9, 12).[4] DLC immediately prepared a letter addressed to RPM identifying itself as Wilson's counsel and demanding that RPM cease communicating with her directly (W. St. ¶ 12; Ex. I). Wilson reviewed that letter (W. St. Ex. B 45:24-46:9)[5] and DLC faxed it to RPM on the same day -- October 16 (W. St. ¶¶ 12-13). There is no dispute that RPM received it (W. St. ¶ 13).

---

[2] Local Rule ("L.R.") 56.1 requires parties to submit evidentiary statements and responses to such statements to highlight which facts are disputed and which facts are agreed upon. This opinion identifies Wilson's and RPM's respective submissions as "W." and "R." followed by appropriate designations: L.R. 56.1 statements as "St. ¶ --," responsive statements as "Resp. St. ¶ --" and memoranda as "Mem.--" or "Resp. Mem.--" or "Supp. Mem. --." Where a response does not provide a version of the facts different from that set out in the original statement, this opinion cites only the original statement. All of the facts narrated in the text are undisputed unless specifically noted otherwise.

[3] Because all relevant events took place in 2014, all later references to dates simply identify the day and month without any need for repeated references to 2014.

[4] As the next paragraph reflects, Wilson testified that those debts did not originally include her AT&T account. But as explained there, that fact is irrelevant to whether she was represented on October 16.

[5] Because Wilson's review of DLC's letter was not referred to in either party's L.R. 56.1 statement, that fact is gleaned from Wilson's deposition testimony. And while RPM has not formally admitted that fact, it would hardly be in a position to deny what took place between Wilson and DLC. As such, that fact is treated as undisputed for purposes of this opinion.

That otherwise straightforward narrative calls for a bit more explanation in light of Wilson's unequivocal deposition testimony (W. St. Ex. B 57:1-57:7):

> Q: Okay. Prior to you faxing the letter, which you're indicating is October 16, 2014, that you received from RPM, which you indicated was the first communication by RPM, you had not retained Michael Wood as your counsel for the AT&T mobility debt; is that true?
> A: Correct.

RPM contends that in so testifying Wilson essentially disclaimed her having been represented as of October 16 with respect to the AT&T debt.[6] But that contention ignores the undisputed facts that after Wilson received the collection letter from RPM she both (1) faxed that letter to DLC and (2) reviewed DLC's response letter identifying itself as her counsel. And those facts in turn leave no doubt as to Wilson being represented by counsel as of October 16.[7]

There is likewise no doubt that following RPM's October 16 receipt of the fax from DLC its employees made approximately 26 collection calls to Wilson and also sent her an email (W. St. ¶¶ 18, 21). Those communications persisted until November 22, when Wilson, in

---

[6] RPM's Resp. Mem. 4 also cites testimony from Wilson's deposition (W. St. Ex. B. 57:21-58:4) in which she agreed that she had not retained counsel until after she had received the first collection call from RPM. But as the parties agree that RPM first called Wilson before October 16 (W. St. ¶ 10), that testimony poses no problems.

[7] Wilson has accompanied her motion with a declaration (W. St. Ex. C) in which she states that her AT&T account was not intended for business purposes (¶ 3) and that DLC represented her as of October 16 (¶ 7). That declaration is the subject of a motion to strike by RPM (Dkt. No. 60) that says it contradicts Wilson's deposition testimony on those two issues. But for the reasons described above, the second of those contentions fails because Wilson was in fact represented as of October 16. And as to the first contention, which challenges the purpose of her AT&T account, Wilson's deposition testimony (W. St. Ex. B 99:1-99:18) that she used her phone to talk to both business and personal acquaintances hardly contradicts her declaration statement (W. St. Ex. C. ¶ 3) that she did not use her phone for a business purpose. Hence RPM's motion to strike is denied.

speaking to an RPM employee, specifically said that she was represented by counsel (W. St. ¶ 22) and RPM then ceased any further collection efforts (R. St. ¶ 38).

Wilson now charges that the communications initiated between October 16 and November 22 violated the Act, while RPM responds that even if that were the case those violations resulted from a good faith error. This opinion will address each issue in turn.

### **RPM's Violation or Non-Violation of Section 1692(c)(a)(2)**

By definition the Act's Section 1692(c)(a)(2) prohibits communication with a debtor (the statute uses the term "consumer") such as Wilson

> if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer . . . .

And as stated earlier, there is no dispute that RPM repeatedly communicated with Wilson after having been notified by DLC that she was represented by counsel (W. St. ¶¶ 13, 22). Thus RPM's only predicate for defeating Wilson on this issue is its audacious contention that DLC was merely impersonating Wilson's counsel when it wrote and submitted these statements to Wilson for review (W. St. Ex. I):

> Our clinic represents the above-referenced client for the purposes of enforcing their rights pursuant to all applicable debt collection laws.
>
> \*       \*       \*
>
> As legal representative for this client, all communication must be made through our office, please do not contact them directly again.

That plainly is a contention that no reasonable jury could credit. And that being so, RPM is necessarily on the statutory hook for its communications directed to Wilson between

October 16 and November 22 unless it can show that those communications were the result of a bona fide error -- a topic to which this opinion will now turn.

### **Viability or Non-Viability of RPM's Bona Fide Error Defense**

Despite its violations of Section 1692(c)(a)(2), RPM can avoid liability if it can prove that those violations resulted from a bona fide error as referred to in Section 1692k(c):

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

Ruth v. Triumph P'ships, 577 F.3d 790, 803 (7th Cir. 2009) identified the three requirements for prevailing on that defense:

> A defendant is entitled to invoke the FDCPA's bona fide error defense only if it can show that the violation: (1) was unintentional, (2) resulted from a bona fide error, and (3) occurred despite the debt collector's maintenance of procedures reasonably adapted to avoid such error.

Because both parties have sought judgment as a matter of law on that defense, this opinion must adopt the Janus-like perspective referenced earlier. On that score, for RPM to prevail on its motion it must point to undisputed facts establishing that each of the three Ruth elements has been satisfied. Wilson's task is less daunting, for having already established RPM's liability under Section 1692(c)(a)(2) she can prevail on her motion merely by knocking out any one of the Ruth elements. Thus each of those elements will be addressed in turn.

As to whether RPM's violations were unintentional, RPM's failure to proffer any testimony from the actual employees who assertedly committed those violations "unintentionally" dooms its pursuit of summary judgment from the outset. That failure can be seen in RPM's St. ¶¶ 32-35:

32. A member of RPM's clerical staff received the fax and documented its receipt in Ms. Wilson's account. Ex. B, pp. 35, 39, 62 (Deposition testimony of Christopher Vittoz)

33. The clerical staff member who received the fax did not "DNC" Ms. Wilson's phone number and did not enter her attorney's contact information. Ex. B, pp. 35, 36, 62.

34. Because a clerical staff member failed to record Ms. Wilson's attorney's contact information in the account notes, RPM's dialing system would not have known that the attorney had a contact number and would not have called the attorney. Ex. B, pp. 62-63.

35. RPM's dialing system, Global Connect, continued to dial Ms. Wilson's number, because the proper notations were not entered. Ex. B, p. 87.

Critically, "Ex. B" sets out not the testimony of the clerical staff member to whom it refers but rather that of Christopher Vittoz, RPM's Chief Financial Officer and Rule 30(b)(6) witness (W. St. Ex. E). Indeed, conspicuously absent from RPM's submissions is testimony from either the clerical employee who failed to enter "DNC" or the collectors who communicated with Wilson thereafter.

RPM's Supp. Mem. 3-6 attempts to overcome that absence by asserting that the violations had to be unintentional (1) because, if the clerical employee had wanted to violate the law, she would not have notated having received the fax and (2) because RPM maintained procedures designed to prevent communications with represented parties and those procedures in fact worked after November 22. But what deep-sixes that attempt by RPM is that a jury could reasonably draw a contrary inference from the undisputed facts.

For example, RPM's recordkeeping system shows the following account note (W. St. Ex. H) as having been entered on October 17:

> rcvd fax from DEBTOR LEGAL CLI that would be able to pay acct due to income wont allowed

That note could surely be reasonably viewed as having placed RPM's collectors on notice that Wilson was represented by counsel. And from that viewpoint it would hardly be a stretch to conclude that their violations were not unintentional.[8] So whether RPM's violations were unintentional is a genuine issue of fact that dooms RPM's motion but (at least for the moment) spares Wilson's, for she can defeat RPM's defense on either or both of the remaining two <u>Ruth</u> elements.

To turn to the second <u>Ruth</u> element -- that the collector's errors were "bona fide" -- Wilson hardly takes a swing. And that is unsurprising, because whether the errors were bona fide is tied directly to whether they were unintentional -- an issue that remains disputed for the just-stated reasons. That leaves Wilson with one final opportunity to sink RPM's asserted defense under Section 1692k(c).

As stated earlier, that section's final requirement is for the collector to have maintained procedures reasonably adapted to avoid the errors that occurred. And in that regard it is true that RPM has adduced considerable evidence of having maintained such procedures: For example, upon receipt of notification that a debtor is represented, RPM employees are trained to collect the attorney's name and contact information, add the code "DNC" next to the debtor's phone number and (of course) cease all communication with the debtor (R. St. ¶ 19). Additionally, entry of the

---

[8] That is particularly the case in light of this holding in <u>Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.</u>, 559 U.S. 573, 604-05 (2010):

> We therefore hold that the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute.

Absent testimony from the actual RPM collectors, a jury could readily draw the inference that in communicating with Wilson those collectors simply misunderstood the requirements of the Act.

code "DNC" triggers RPM's cloud-based dialing system to refuse automatically any attempt to communicate with the debtor (R. St. ¶¶ 23-27). Finally, RPM periodically reviews call recordings, listens to phone calls, reviews collector notes and performs audits of its clerical employees (R. St. ¶¶ 29-30).[9]

Wilson's Resp. Mem. 9-13 attacks those procedures by pointing out that RPM's compliance efforts are limited relative to the scale of its collection activity. Moreover, the violations at issue might have been prevented had RPM required its collectors to review account notes before communicating with debtors, which it did not (R. Resp. St. ¶ 30). But as explained by Kort v. Diversified Collection Servs. Inc., 394 F.3d 530, 539 (7th Cir. 2005):

> Nevertheless, § 1692k(c) does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution.

And given the fact-intensive nature of the dispute here, whether RPM exercised "reasonable precaution" must ultimately be resolved by a jury. Thus Wilson sustains a called third strike as to RPM's bona fide error defense, and her motion for summary judgment is also denied.

**Conclusion**

While both sides' motions for summary judgment (Dkt. Nos. 51 and 52) are denied, Wilson has succeeded in both defeating RPM's motion to strike (Dkt. No. 60) and establishing as a matter of law that RPM violated Section 1692(c)(a)(2). That leaves to a jury the viability or non-viability of RPM's bona fide error defense. To establish and schedule further procedures

---

[9] Although Wilson has disputed certain of those facts, it will be remembered that RPM's motion has already been rejected. Hence this opinion is crediting RPM's version of the facts for purposes of evaluating the final two elements of RPM's bona fide error defense.

toward that end, a status hearing is set for 9 a.m. May 27, 2016 to discuss the next steps in this action.

_____
Milton I. Shadur
Senior United States District Judge

Date: May 20, 2016